**Ronald Russell SCARBERRY, Petitioner,**

**v.**

**Terry MAPES, Respondent.**

**No. 4:04–CV–90049.**

United States District Court, S.D. Iowa, Central Division.

Feb. 11, 2005.

Unes Jay Booth, Osceola, IA, for petitioner.

Thomas W. Andrews, Department of Justice, Des Moines, IA, for Respondent.

## MEMORANDUM RULING CONDITIONALLY GRANTING PETITION FOR A WRIT OF HABEAS CORPUS

PRATT, District Judge.

Petitioner Ronald Russell Scarberry brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his state court convictions for conspiracy to manufacture methamphetamine, possession of a precursor, and possession of methamphetamine. Scarberry argues that he is entitled to habeas relief on the basis that his counsel at trial and on direct appeal were ineffective because they did not make the argument that introduction of certain incriminating statements violated his Sixth Amendment right to counsel. For the reasons articulated below, the court will grant Scarberry's petition.

## BACKGROUND

On June 22, 1998, Scarberry was driving a car owned by Randy Fry, with Fry as a passenger. State Trooper Jerad Dreeszen stopped Scarberry for speeding in Warren County. When asked if the car contained contraband, Scarberry replied "I don't think so." Dreeszen pushed and Scarberry said "no." After getting consent from Fry and Scarberry to search their persons and the car, Dreeszen searched Scarberry and found $1,690 in cash. The trooper waited for backup before he searched Fry or the car. On Fry, Dreeszen found a digital scale, zip-lock baggies, and $399 in cash.

The search of the car revealed a large quantity of pseudoephedrine in a black shaving kit, razor blades in the glove compartment, a cellular phone on the front seat, a portable scanner and a walkie-talkie radio on the back seat, lithium batteries in a brown plastic bag, multiple miscellaneous gloves which fit only one hand, and a roll of plastic tubing. The pseudoephedrine, lithium batteries, gloves, and plastic tubing can be used in manufacturing methamphetamine. Cell phones are often used in its distribution. Walkie-talkie radios are often used by meth manufacturers while stealing anhydrous ammonia. After searching the passenger compartment, Dreeszen placed Scarberry and Fry under arrest.

Dreeszen's search of the trunk revealed more meth-related items. Dreeszen found four pill bottles containing pseudoephedrine, more lithium batteries, two plastic fuel containers with plastic tubing attached, one which later tested positive for having previously contained acid, and a jug of muriatic acid. The items listed as found in the passenger compartment and trunk are either precursors to making meth or can be involved in its distribution. Upon reaching the jail, Dreeszen performed another search of Scarberry and Fry, discovering that each had meth on their person, Scarberry having 0.90 grams. When Dreeszen asked, Scarberry admitted he had taken meth earlier that day.

The trooper arrested Scarberry, and state officials charged him with conspiracy to manufacture methamphetamine, possession of a precursor, and possession of methamphetamine. These are violations of sections 124.401(1)(b)(7), 124.401(4), and 124.401(5) of the Iowa Code (1997), respectively. Scarberry secured representation, and was released pending trial.

On November 20, 1998, Des Moines police arrested Scarberry in Polk County on unrelated charges. Before arresting him, Officer Larina Blad ran a criminal history search. The history turned up the Warren County charges. Officer Blad knew that Scarberry had been charged with manufac-

ture and possession in Warren County, but did not know the disposition of those charges (Pet'r App. at 78). After arresting him, Officer Blad and Officer Patrick Hickey interrogated Scarberry regarding the Polk County charge, but did not ask about the Warren County charges or their status, whether pending, dismissed, or otherwise. (Pet'r App. at 78)

The officers informed Scarberry of his *Miranda*[1] rights in the Polk County interrogation, and he waived his right to counsel for that questioning. While speaking with the officers about the Polk County case, Scarberry "explained the process he used to manufacture methamphetamine, including the length of time the process took and the fact the necessary materials were readily available. He admitted to manufacturing the drug for his personal use." (Pet'r App. at 131). At the Warren County trial, the state offered Officer Hickey's testimony recounting the Polk County interrogation to show that Scarberry knew the process used to manufacture methamphetamine.

Scarberry's defense attorney for the Warren County trial, Rush Nigut, filed a motion in limine to exclude Officer Hickey's testimony as irrelevant, immaterial, and more prejudicial than probative. The trial court denied this motion and allowed Officer Hickey to testify that Scarberry described the process he used to manufacture methamphetamine in the Polk County interrogation. (Pet'r App. at 22–25.) Nigut did not assert any Sixth Amendment constitutional issue regarding the Polk County interrogation. The trial court allowed the testimony on the basis that it showed Scarberry's knowledge of the process used to manufacture methamphetamine, and was probative as to whether Scarberry could actually manufacture methamphetamine. (Pet'r App. at 27–29.)

Nigut brought out a great deal of evidence at trial consistent with Scarberry's defense that Fry was manufacturing meth, not Scarberry. Fry admitted the pseudoephedrine in the car was his. (Resp.App. at 1a–38.) Scarberry and Fry also worked for Movers, Inc., a radio-dispatched moving company, which explained the cell-phone and walkie-talkie radio. (*Id.* at 1a–32 to 1a–34.) Nigut pointed out that the police had not done a fingerprint analysis on the items in the car to tie the car's contents to Scarberry. (*Id.* at 32.) Additionally, testimony and documents were introduced showing Scarberry's mother had loaned him $3,000 just prior to the arrest where Trooper Dreeszen found $1,690. (*Id.* at 1a–119 to 1a–120.)

The information about the contents of the car came in at trial, including the fact that it was Fry's car that Scarberry was driving. Nigut highlighted that many ingredients necessary to manufacture meth were not in the car, including anhydrous ammonia, starter fluid, filters, funnels, something used to stir, and aluminum foil. (*Id.* at 1a–36 to 1a–37.) He also pointed out that Scarberry driving Fry's car was the only evidence linking him to any of the materials found in the car. On direct appeal, the Iowa Court of Appeals affirmed the trial court's decision. (Pet'r App. at 45–49.) James Tomka, Scarberry's appellate counsel, like Scarberry's trial counsel, did not make a Sixth Amendment argument as to the propriety of introducing information elicited by police officers in the Polk County interrogation. (Pet'r App. at 73–74.)

Scarberry applied for state post conviction review in the Warren County District Court and raised the Sixth Amendment issue for the first time. (Pet'r App. at 120.) He claimed that allowing introduction of the evidence obtained in the Polk

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

County police interrogation violated his right to counsel under the Sixth Amendment. He asserted that, based on *Massiah v. United States*, 377 U.S. 201, 207, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), his right to counsel as to the Warren County charges had attached at arraignment for that charge, he invoked that right, and the Polk County interrogation was not admissible because his counsel was not present. Additionally, he argued that the waiver of his *Miranda* right to counsel as to the Polk County charges was not effective as to his Sixth Amendment right to counsel for the Warren County charges. More specifically, because neither his trial counsel nor his appellate counsel raised the issue at trial or on direct appeal, Scarberry asserted that both attorneys gave him ineffective representation by failing to identify the issue. Both the district court and the court of appeals rejected Scarberry's Sixth Amendment claim. (App. p. 124, 132–33). The courts applied *McNeil v. Wisconsin*, 501 U.S. 171, 182, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), which held that the state could interrogate individuals regarding other crimes outside the presence of counsel, despite a pending charge, if the Sixth Amendment right to counsel had not attached as to the other crimes.

Scarberry filed a timely petition for a writ of habeas corpus in this court. Respondent filed a motion to dismiss, alleging that Scarberry failed to exhaust all but the Sixth Amendment claim in state court. Scarberry amended his complaint in response to the motion to dismiss, withdrawing all but the Sixth Amendment claim. This court then found the motion to dismiss moot and denied it. Scarberry has properly exhausted the lone issue remaining in the petition, and it is ready for ruling.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). Under AEDPA:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2004). A state court decision is "contrary to" clearly established federal law if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases or if the state court confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. *Lockyer v. Andrade*, 538 U.S. 63, 73, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). Under the "unreasonable application" standard, a court may grant the writ if the state court identifies the correct governing legal principle but applies that principle to the facts of the petitioner's case in an objectively unreasonable way. *Id.* at 75, 123 S.Ct. 1166. "Unreasonable" means something more than an "erroneous" or "incorrect" application of clearly established law, and a reviewing federal court may not substitute

its judgment for the state court's, even if the federal court, in its own judgment, disagrees with the state court's decision. *Id.*

## DISCUSSION

In order for Scarberry to prevail on his claim that his trial counsel and appellate counsel were ineffective, he must show that his trial counsel and appellate counsel failed to assert a valid Sixth Amendment claim because they were unfamiliar with the relevant law. *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The Iowa post conviction review courts decided that there was no valid Sixth Amendment violation to assert, and consequently, that trial counsel and appellate counsel did not fail to provide effective assistance. It is this court's duty, pursuant to 28 U.S.C. § 2254, to determine whether the Iowa courts, in finding no Sixth Amendment violation, applied a principle contrary to Supreme Court precedent or were unreasonable in applying such a principle. *Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). As a first step, therefore, this court must determine whether there was a valid Sixth Amendment waiver. If there was no waiver, the second step is to determine whether Scarberry's Sixth Amendment right to counsel was violated. Finally, if there was a violation, then the court must determine whether Scarberry's counsel offered ineffective assistance.

## I. Waiver

■ The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. The Sixth Amendment right to counsel attaches when the government formally charges an individual, or in other words, at arraignment. *United States v. Gouveia,* 467 U.S. 180, 187–88, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). This gives the accused the right to counsel

at all critical stages of the process leading up to and including trial. *Maine v. Moulton,* 474 U.S. 159, 176, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985). The Sixth Amendment right to counsel should not be confused with the Fifth Amendment right to counsel. The latter provides individuals the right to a lawyer in a custodial police interrogation. *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). A *Miranda* waiver—police asking an accused to waive his Fifth and Sixth Amendment right to counsel—is sufficient to waive the Sixth Amendment right to counsel if that right has attached and the accused has not invoked it. *Patterson v. Illinois,* 487 U.S. 285, 299, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988). An accused, who invokes his or her Sixth Amendment right by securing counsel, however, cannot make a valid waiver of the right at a police-initiated interrogation. *Michigan v. Jackson,* 475 U.S. 625, 636, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986) (applying Fifth Amendment rule from *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)).

■ In its alternative holding on post-conviction review, the Iowa Court of Appeals applied *Patterson* to Scarberry's *Miranda* waiver and held that the waiver in the Polk County interrogation was sufficient to waive his Sixth Amendment right to counsel regarding the Warren County charges. This would have been the correct application of *Patterson* had Scarberry's right to counsel in the Warren County case merely attached. Scarberry's Sixth Amendment right to counsel had not only *attached* with respect to the Warren County charge, Scarberry had actually *invoked* that right—he was represented in the case. Therefore, Scarberry's *Miranda* waiver was not sufficient to, and did not, waive his right to counsel with respect to the Warren County charge because the

police initiated the interrogation. The Iowa Court of Appeals did not apply *Patterson* correctly.

■ Under § 2254 review, however, a state court's ruling may be incorrect, but not unreasonable. *See Early v. Packer*, 537 U.S. 3, 10–11, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) *rehearing denied* 537 U.S. 1148, 123 S.Ct. 955, 154 L.Ed.2d 854 (2003). In this case, however, the Iowa Court of Appeals identified a well-established Supreme Court principle, and applied it incorrectly. When this occurs, the state court's action is deemed unreasonable. *See Williams*, 529 U.S. at 394–95, 120 S.Ct. 1495. This court holds that the Iowa Court of Appeals's finding of a valid waiver was an unreasonable application of clearly established Supreme Court precedent.

## II. Sixth Amendment Right to Counsel Violation

### A. *McNeil* Issue.

■ If a defendant has invoked his Sixth Amendment right to counsel, a court must exclude statements obtained pursuant to police-initiated custodial questioning. *Jackson*, 475 U.S. at 636, 106 S.Ct. 1404. "Incriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of *those offenses.*" *McNeil*, 501 U.S. at 176, 111 S.Ct. 2204 (emphasis added) (citations to quoted cases omitted). *McNeil* involved a defendant indicted for armed robbery, who invoked his Sixth Amendment right to counsel for the robbery charge, and who police questioned regarding non-Sixth Amendment crimes. 501 U.S. at 173–74, 111 S.Ct. 2204. The defendant waived his Miranda rights each time before police interrogations regarding the non-Sixth Amendment crimes. After the state charged the defendant with the non-Sixth Amendment crimes, the defendant sought to have information obtained in the interrogations suppressed at the trial for those crimes. He asserted that his Sixth Amendment right to counsel had been violated by the police initiating the interrogations after he had invoked the right as to the armed robbery charge. *Id.* at 174, 111 S.Ct. 2204.

■ The Supreme Court rejected this argument. It held that the Sixth Amendment right to counsel is "offense specific." *Id.* at 177, 111 S.Ct. 2204. An accused, who invokes his Sixth Amendment right to counsel with regard to one charged crime, may be questioned by police about another crime. The Sixth Amendment does not prevent the government from introducing statements made during questioning for the non-Sixth Amendment crime at a trial for the non-Sixth Amendment crime. *Id.* This holding does not mean, however, that the evidence gained during such questioning is admissible at trial for the Sixth Amendment charge.

The rationale underlying *McNeil* is that the police and the public have an overwhelming interest in investigating other crimes even though the Sixth Amendment right to counsel has attached. *Id.* at 175–76, 111 S.Ct. 2204. The rationale underlying the Sixth Amendment right to counsel, however, is that when an accused invokes the right to an attorney, the intent is to have the attorney act as a "medium" between the accused and the state. *Id.* at 176, 111 S.Ct. 2204. When the state initiates adversary criminal proceedings by charging the accused, the state is committed to prosecute, and "the adverse positions of government and defendant have solidified." *See Moulton*, 474 U.S. at 171, 106 S.Ct. 477 (quoting *Gouveia*, 467 U.S. at 189, 104 S.Ct. 2292).

■ The Sixth Amendment right to counsel is not necessarily violated until evidence obtained from such an interroga-

tion is admitted at trial. *See Massiah*, 377 U.S. at 207, 84 S.Ct. 1199. A violation does not always occur when an interrogation takes place without counsel after the right has attached or is invoked, *see McNeil*, 501 U.S. at 176, 111 S.Ct. 2204, but when evidence from such an interrogation is admitted at the trial for the charges to which the right had attached, the violation is complete. *Massiah*, 377 U.S. at 207, 84 S.Ct. 1199.

▆ Scarberry's case would fall within the *McNeil* "offense specific" rule if the issue were whether introduction of evidence obtained at the Polk County interrogation is admissible at the Polk County trial. Scarberry invoked his Sixth Amendment right to counsel for the Warren County charges. In the Polk County interrogation, police did not ask Scarberry about the pending charges, and in fact, those charges did not come up. Scarberry made the challenged statements during that interrogation. The Polk County crime was new, and had distinct elements with respect to the Warren County charge. Consequently, Scarberry's Sixth Amendment right to counsel, as to the Warren County charge, did not make the Polk County interrogation without counsel a Sixth Amendment violation. *McNeil* allows the interrogation and the admission of statements made at the Polk County interrogation at trial for the Polk County charges. 501 U.S. at 176, 111 S.Ct. 2204.

The only way to reconcile *McNeil* and *Massiah* as applied to Scarberry's situation, however, is to hold that the Polk County interrogation itself did not violate Scarberry's right to counsel, but that introduction of evidence obtained during the interrogation at the Warren County trial did violate his right to counsel.[2] The violation of Scarberry's right to counsel occurred when Officer Hickey, the Des

Moines police officer, testified at Scarberry's Warren County trial. Scarberry had invoked his right to have his attorney act as a medium between himself and the state regarding the Warren County charges. Because his attorney was not present at the Polk County interrogation, Officer Hickey's testimony at the Warren County trial violated Scarberry's Sixth Amendment right to counsel. Therefore, the Iowa post conviction review courts were incorrect in finding no Sixth Amendment violation as to this issue.

▆ The Eighth Circuit Court of Appeals applied the "offense-specific" rule from *McNeil*, however, to a set of facts closely resembling those in the case at hand. *Hellum v. Warden, United States Penitentiary–Leavenworth*, 28 F.3d 903, 909 (8th Cir.1994). In *Hellum*, the state charged the defendant with murder, assault, and kidnaping, and appointed him counsel. Thus, his Sixth Amendment right to counsel attached, and defendant invoked it, as to those crimes. *Id.* After the defendant attempted to escape from prison before trial, police interrogated him about the escape outside the presence of his counsel. The defendant made incriminating statements during this interrogation, and the prosecution introduced these statements at his trial for the murder, assault, and kidnaping. *Id.*

The court of appeals determined the *McNeil* rule applied, even though the prosecution introduced the incriminating statements at the trial for the Sixth Amendment crimes. *Id.* The court viewed the statements as free of any Sixth Amendment taint because the police obtained the statements in the interrogation conducted to investigate the escape, the crime as to which the Sixth Amendment had not at-

---

**2.** Conversely, introducing evidence obtained from the interrogation at the trial for the Polk County charges would not violate the Sixth Amendment.

tached. *Id.* In other words, the court held that a police interrogation does not violate the Sixth Amendment if the interrogation was part of an investigation of "a new crime, with distinct elements." *Id. See Texas v. Cobb,* 532 U.S. 162, 173, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001) (applying a similar rule where statements were introduced at trial for the non-Sixth Amendment crime). *Hellum* is an example of the ease with which the Sixth Amendment right to counsel, where introduction at trial violates the right, is merged with the paradigm of the Fifth Amendment right to counsel, where the interrogation itself is the violation, and suppression at trial is a remedy for that violation.

The Eighth Circuit held the interrogation itself did not violate the Sixth Amendment, but it did not address whether the *introduction* of evidence, itself, was a violation. Additionally, it did not address whether the interrogation violated *Moulton's* prohibition of knowing circumvention of an accused's Sixth Amendment right to counsel, which this court addresses below. Despite these differences, the Eighth Circuit found no Sixth Amendment violation in materially indistinguishable circumstances. *Hellum,* 28 F.3d at 909. Accordingly, this court cannot find the Iowa Court of Appeals's consistent holding unreasonable.

### B. *Moulton* Issue

 Scarberry's second argument is that the Des Moines police officers knowingly circumvented his Sixth Amendment right to counsel with respect to the Warren County charge. "[I]ncriminating statements pertaining to pending charges are inadmissible at the trial of those charges, not withstanding the fact that the police were also investigating other crimes, if, in obtaining this evidence, the State violated the Sixth Amendment by knowingly circumventing the accused's right to the assistance of counsel." *Moulton,* 474

U.S. at 180, 106 S.Ct. 477. "[P]olice have an affirmative obligation not to act in a manner that circumvents and thereby dilutes the protection afforded by the right to counsel." *Manning v. Bowersox,* 310 F.3d 571, 575 (8th Cir.2002) (quoting *Moulton,* 474 U.S. at 171, 106 S.Ct. 477).

As explained above, the "offense specific" rule provides that Scarberry's Polk County interrogation, on its face, was not a Sixth Amendment violation. However, in *Moulton,* the Court established the principle that police cannot knowingly circumvent an accused's Sixth Amendment right to counsel, 474 U.S. at 180, 106 S.Ct. 477. In other words, police may not use the "offense specific" nature of the Sixth Amendment right to counsel surreptitiously to avoid having counsel present by asserting other goals for their action. In *Moulton,* police persuaded a co-defendant to record telephone calls and wear a body wire transmitter to a meeting where the accused and his co-defendant were to discuss their defense to the charges. *Id.* at 163–66, 106 S.Ct. 477. The police asserted that the purpose of the body wire and recorded phone calls was to investigate the accused's threats against witnesses, and protect the co-defendant if his cooperation with the police were uncovered. *Id.* at 164–65, 106 S.Ct. 477. The Supreme Court held that the asserted purpose of investigating threats against witnesses did not justify the police's knowing circumvention of the accused's right to counsel. *Id.* at 180, 106 S.Ct. 477.

*Moulton's* rule that police may not knowingly circumvent an accused's Sixth Amendment right to counsel applies to Scarberry's case, but the Iowa post conviction review courts rested on the *McNeil* "offense-specific" determination without evaluating the *Moulton* issue. As described above, *McNeil,* 501 U.S. at 173–74, 111 S.Ct. 2204, and *Cobb,* 532 U.S. at 173,

121 S.Ct. 1335 (2001), govern cases where evidence obtained in a non-Sixth Amendment interrogation is introduced at trial for non-Sixth Amendment charges. *Moulton* applies where the prosecution introduces the evidence gathered in a non-Sixth Amendment interrogation at trial for Sixth Amendment charges. The principle in this situation, as stated in *Moulton,* is that:

> [K]nowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity. Accordingly, the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent.

*Moulton,* 474 U.S. at 176, 106 S.Ct. 477.

In every Supreme Court case addressing the knowing circumvention issue cited by petitioner, however, the state actors charged with circumventing the accused's right to counsel were directly involved in the case to which the right had attached. *See, e.g., United States v. Henry,* 447 U.S. 264, 275, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), *Moulton,* 474 U.S. 159, 106 S.Ct. 477, and *Massiah,* 377 U.S. 201, 84 S.Ct. 1199 (1964). In these cases, the officers obviously knew that the accused's Sixth Amendment rights had attached. *See Henry,* 447 U.S. at 275, 100 S.Ct. 2183 (finding a Sixth Amendment violation where police "intentionally creat[ed] a situation likely to induce Henry to make incriminating statements without the assistance of counsel."). In *Hellum,* 28 F.3d at 905–06, the Eighth Circuit did not address the issue of whether the police knowingly circumvented the accused's right to counsel in violation of *Moulton,* but there is no indication the issue was raised in that case.

Nevertheless, under *Moulton,* the Des Moines police violated Scarberry's Sixth Amendment right to counsel if they knowingly circumvented that right. The Sixth Amendment requires that knowledge of one state actor be imputed to another state actor. *Jackson,* 475 U.S. at 634, 106 S.Ct. 1404. Additionally, the state must "respect and preserve" the accused's choice of assistance. *Id.* (citing *Moulton,* 474 U.S. at 170–71, 106 S.Ct. 477.) Considering these well established Supreme Court principles, the Des Moines police created a situation that was likely to result in incriminating statements as to the Warren County charge. *See Henry,* 447 U.S. at 274, 100 S.Ct. 2183. They did not violate the Sixth Amendment by conducting the interrogation, but when Officer Hickey testified in the Warren County case, the Sixth Amendment violation occurred. *See Massiah,* 377 U.S. at 207, 84 S.Ct. 1199. Because the Sixth Amendment is offense specific, an interrogation and introduction of testimony resulting therefrom may be legal as to one case, but illegal as to another. The Polk County interrogation did not violate the Sixth Amendment as to either charge. As soon as Officer Hickey offered testimony in the Warren County trial, however, Scarberry's Sixth Amendment right to counsel was violated. *See id.*

The Des Moines police could question Scarberry regarding the Polk County case without violating his Sixth Amendment rights because they were investigating a new crime. Officer Blad knew, however, that Warren County police had charged Scarberry with conspiracy to manufacture methamphetamine (Pet'r App. at 78). The investigation in Polk County was also for manufacture of methamphetamine. Officer Blad knew of the Warren County charges and Scarberry made remarks in the interrogation which were incriminating with respect to the Warren County charge. Thus, considering the officers' duty to protect Scarberry's

invoked Sixth Amendment rights, the Des Moines police knowingly circumvented his Sixth Amendment right to counsel.

Based on the standard of review under 28 U.S.C. § 2254(d), a reviewing district court may not grant a writ of habeas corpus unless it finds that the state court decision is contrary to clearly established Supreme Court precedent. *Lockyer v. Andrade*, 538 U.S. 63, 73, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). *Moulton* applies to this case, and the Iowa Court of Appeals was unreasonable in failing to apply its principles. Therefore, this court finds that the Iowa Court of Appeals decision is contrary to clearly established Supreme Court precedent. *See Williams v. Taylor*, 529 U.S. 362, 409, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

### IV. Ineffective Assistance of Counsel

■ Scarberry's petition for habeas corpus relief does not simply challenge his confinement based on a violation of his Sixth Amendment rights. Scarberry alleges his attorney at trial, Rush Nigut, provided ineffective assistance at trial because he failed to identify and argue that Scarberry's Sixth Amendment rights were violated. In addition, he argues that his attorney on direct appeal, James Tomka, provided ineffective assistance because he failed to identify that Nigut was ineffective regarding the Sixth Amendment issue. Neither the Iowa District Court for Warren County nor the Iowa Court of Appeals addressed whether Scarberry's attorneys provided ineffective assistance because both courts determined there was no Sixth Amendment violation. If either court had reached the ineffective assistance issue, this court would evaluate the decision on the unreasonable application standard of § 2254, as applied above. *See Bell v. Cone*, 535 U.S. 685, 694–95, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). Because no state court reached this issue, this court will evaluate de novo whether both Scarberry's

trial counsel and appellate counsel were ineffective.

To show ineffective assistance of counsel, petitioner must demonstrate counsel's performance was deficient, and the deficiency prejudiced petitioner. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Deficient performance is one that is below an objective standard of reasonableness. *Id.* at 687–88, 104 S.Ct. 2052. To show prejudice from such a deficient performance, petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

■ The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead ha[s] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (quoting *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052 *ibid.*) "Where the defense is substantially weakened because of the unawareness on the part of defense counsel of a rule of law basic to the case, the accused is not given the effective representation guaranteed him by the Constitution." *Poe v. United States*, 233 F.Supp. 173, 178 (D.D.C.1964). Neither Nigut nor Tomka identified that Scarberry's Sixth Amendment right to counsel was violated when Officer Hickey testified about the Polk County interrogation. Both attorneys provided objectively unreasonable performance under prevailing norms.

■ The second step of ineffective assistance analysis is to determine whether Scarberry's attorneys' errors caused him actual prejudice. To meet this standard, there must be "probability sufficient to

undermine confidence in the outcome" that the result of the trial and direct appeal would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. On direct review, the Iowa Court of Appeals evaluated the sufficiency of all of the evidence admitted against Scarberry, which included the testimony of Officer Hickey. The court found the whole of the evidence sufficient to support the conspiracy charge and both possession charges. In the course of evaluating whether Officer Hickey's testimony was more prejudicial than probative, however, the court also evaluated the State's actual need for Officer Hickey's challenged statements:

> In light of the fact that the majority of the State's evidence was circumstantial, we agree the state had an actual need for the statement. As discussed above, the evidence is strong because it is Scarberry's own statement to a police officer. Scarberry's statement also strongly supports the possession of a precursor charge because he knew how to manufacture methamphetamine using pseudoephedrine as a precursor. This evidence makes it much more likely Scarberry did conspire with Fry to manufacture methamphetamine and more likely he would have possessed pseudoephedrine to further that purpose.

(Pet'r App. at 46–47). Although the court was weighing Officer Hickey's statement for other purposes, it is clear that the court believed there was a reasonable probability the outcome would have been different but for the statement. Based on the Iowa Court of Appeals's determination, this court finds that without the statement, confidence in the outcome is undermined. Thus, Scarberry endured actual prejudice from the ineffective assistance of both his trial and appellate counsel.

Because Scarberry received ineffective assistance at both trial and on direct appeal, and because this ineffective assistance prejudiced the result, Scarberry's failure to make the Sixth Amendment claim at trial or on direct appeal did not act as a procedural default of the claim. The court finds the Iowa Court of Appeals's decision was an unreasonable application of governing Sixth Amendment principles, there was not an effective waiver, and Scarberry's trial and appellate counsel were ineffective for failing to identify the violation. Scarberry's petition for a writ of habeas corpus will be granted.

## CONCLUSION

For the reasons set forth above, Ronald Russell Scarberry's petition for a writ of habeas corpus is **GRANTED**. The execution of the writ of habeas corpus, however, is **STAYED** for 90 days from the date of this order both to permit the State of Iowa to make a decision whether to prosecute petitioner again, and if so, to allow the state time to provide Scarberry with a new trial. If petitioner is not provided with a new trial within the time specified, the writ will issue, and the respondent shall release petitioner.

IT IS ORDERED.